# I. W. Wiles *v.* The People's Gas Company, Appellant.

*Mechanics' liens—Oil leases—Personal property of lessees liable—Other property exempt.*

The local Act of March 7, 1873, P. L. 219, confirming the right to file mechanics' liens against certain leasehold interests and personal property thereon, applies to such leasehold estates and to personal property and fixtures thereon of the lessees. It does not, in terms or by necessary implication, extend to the property of strangers whether on or off the premises.

*Words and phrases—Option defined.*

An option is a right of choice, election or selection ; not a right to the thing, but a right to acquire it or an interest in it on certain conditions. Not until the owner of an option elects to accept and enforce its terms does it become binding upon him.

*Province of court and jury—Optional agreement—Fraud—Mechanic's lien law of 1873.*

A substantial present interest cannot be fraudulently converted into an option or disguised under the form of one; and while the legal effect of a written agreement is for the interpretation of the court, whether its terms are so favorable to an assignor in view of the exigencies of the business for which it provided, as to be in effect a fraudulent evasion of

the mechanic's lien law of March 7, 1873, P. L. 219, is a question of fact for the jury and it is error for the court to pass upon them as matter of law.

Argued May 12, 1898. Appeal, No. 184, April T., 1898, by defendant, from judgment of C. P. Butler Co., March T., 1898, No. 332, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Reversed.

Sci. fa. sur mechanic's lien.    Before GREER, P. J.

It appears from the evidence that one Joseph B. Bredin leased certain lands for oil and gas purposes to Norman Bredin. Norman sold undivided interests to the said leasehold estate, and he and his cotenants drilled one well which produced gas, and all the cotenants sold the leasehold estate to the People's Gas Company, who proceeded to drill another well. The People's Gas Company then made an agreement with one Otto Limberg by which he bought a certain interest in 100 acres in the lease on which the well was located, but not producing oil. Limberg proceeded to continue work on the well, and the laborers filed a mechanic's lien under the special act of assembly of March 7, 1873, P. L. 219, against the company and Limberg and Norman Bredin, subsequently discontinuing against Norman Bredin, and the present case is one of the said labor claims upon the result of which others were dependent. The substance of the agreement between the gas company and Limberg is as follows:

The agreement starts by naming the parties thereto and then follows a number of whereases, historical and otherwise, setting forth the authority of the company's officers to execute it, as follows:

" Resolved that the President and Secretary of the company be and are hereby authorized and directed to enter into a contract in writing under the seal of the company with Otto Limberg, granting to him one hundred acres off of the south end of the lease for oil and gas purposes held by the company on lands of Joseph B. Bredin, Esq., in Butler township, on the following terms and conditions, to-wit: That the said Limberg or his assigns will within fifteen days from date of said contract rig up the gas well No. 2 on said hundred acres and

bail the water out of same and give the company an opportunity to test the same and ascertain the gas pressure in said well at the present depth; and in the event this company so desire it shall have the option to take said gas well upon payment to said Limberg or his assigns of the cost of rigging up said well and bailing the water out of same. And in the event the company does not want to take said well it will grant the said Limberg or his assigns the right to use the rig and material at said well for the purpose of drilling said well to and through the fourth sand upon condition that upon the event that gas is obtained at any depth below where said well now is, the company shall have the option of stopping further operations and take the said well and gas upon paying to said Limberg or his assigns the cost of drilling said well to the depth where such gas is obtained. The price for said drilling is to be one dollar per foot.

" In event that said Limberg or his assigns shall obtain oil in said well, he or they shall have the right to take said rig or material now at said well upon paying to this company the value of same where the same now is.

" In the event of other wells being drilled on said lease by said Limberg or his assigns, this company shall have the right to take any gas well found thereon upon payment of the actual cost of same to date of such taking, and a reasonable opportunity shall in all cases be afforded this company of testing the gas supply obtained in any well before it shall be compelled to exercise its option of purchasing same as herein stated, all oil wells to be the property of said Limberg or his assigns.

" In no event shall this company be liable for any work or labor done or materials furnished in and about the operations of said lease, except in case they exercise their option of taking a gas well as hereinbefore stated.

" Now this agreement witnesseth,

" That in consideration of the above premises and the stipulations, promises, covenants and agreements, and to be kept and performed on the part of said Otto Limberg, his heirs or assigns, the People's Gas Company do by these presents assign, transfer and set over to said Otto Limberg, his heirs and assigns, all that portion of a certain leasehold estate aforementioned, said portion being situate, etc. . . .

"And further, said first party promises and agrees to and with second party, his heirs and assigns, to exercise its option to take or refuse to take as set forth in foregoing resolution, and upon exercising the said option to take as aforesaid, to keep and perform the stipulations, agreements and conditions specifically set forth, and as set forth in the above resolution moved and adopted as above written and according to its true intent and purpose upon the happening of the events therein contemplated and mentioned and provided for therein.

" In consideration of the foregoing premises, assignment, stipulations, promises, covenants and agreements to be kept and performed upon the part of said first party, the said Otto Limberg, for himself, his heirs and assigns, promises, covenants and agrees to keep and perform all the stipulations and agreements and conditions specifically set forth, and as set forth in the above resolution moved and adopted as above written and according to its true intent and purpose upon the happening of the events therein contemplated and mentioned and provided for therein."

The court below directed a verdict for plaintiff for $81.90. Defendant appealed.

*Errors assigned* among others were (1) refusal of defendant's first point, which point is as follows : " The court is respectfully requested to say to the jury that the People's Gas Company, defendants, are, as the evidence discloses, neither lessee nor tenant of the premises against which the plaintiff claims to have a lien." (4) Error in the general charge as follows : " By the agreement the company reserved an option to take the gas and agreed to pay the expenses of producing it and thereby remained the owner, at least until it elected not to take it." (5) In the general charge as follows : " Now, gentlemen, we say to you for the purposes of this case that the defendant company here in reserving the gas or reserving the right to take the gas, if gas was found, and the right to prevent Mr. Limberg from going any farther in search of oil if they saw fit to do so, continued their ownership in the lease and that continued them as tenants or lessees." (7) In directing a verdict for plaintiff.

*C. Walker* and *Joseph B. Bredin*, for appellant.—If an accept-
ance is not made within the time fixed, the owner is no longer
bound by the offer, and the option is at an end: McMillan v.
Gas Co., 159 Pa. 142.

A covenant in a lease, giving the right to purchase the prem-
ises, is a continuing offer to sell, which, when accepted, consti-
tutes a contract of sale: Willard v. Taylor, 8 Wall. (U. S.) 557.

Undoubtedly the burden on the plaintiff here was to show
a title in the People's Gas Company, constituting it a tenant,
and this the plaintiff did not do. Defendant at best had no
more than an option and its agreement did not contain the
qualities of a valid contract without any portion of the lease-
hold estate in question.

*J. W. Hutchinson*, for appellee.—The People's Gas Company
were the owners of a distinct interest in the leasehold against
which this lien was filed, being the owner of the gas interest
in the wells to be controlled by Limberg. The language used
in the agreement is such as has been construed by the Supreme
Court to mean personal liability and not sufficient to prevent
the filing of a mechanic's lien against the property: Nice v.
Walker, 153 Pa. 123 ; Schmid v. Improvement Co., 162 Pa. 211.

OPINION BY SMITH, J., July 19, 1898:

In an opinion just filed in No. 73, April term, 1898, we have
construed the phases of the act of March 7, 1873, presented
here ; we need not repeat the interpretation of the act, but refer
to what is said in that opinion so far as it is material to this
case.

The principal question before us involves the construction
of the agreement between Otto Limberg and the gas company.
Did the company part with its entire interest in the lease under
which, as assignee, it held the leasehold for oil and gas purposes
and thereby remained free from liability for any work done in
the operation and development of the leasehold for oil and gas ?
The material parts of this agreement or assignment are given
in the reporter's statement of the case. By the terms of the
assignment the leasehold is "transferred and set over to Lim-
berg, his heirs and assigns " in language sufficient in itself to

convey any and all the interest of the gas company in the lease-hold estate of the one hundred acres described.

The company owned the derrick, boiler, engine and casing on the premises and retained the title to it, but gave Limberg the right to use this machinery and material in the work specified in the agreement. The mechanic's lien was filed against the leasehold, and also against the machinery and fixtures of the company thus left on the premises, and this controversy is over the right to maintain the lien against the latter. It is contended on behalf of the defendant that it is not an owner, lessee, or tenant, within the meaning of the statute, and therefore that no lien can be filed against any of their property on the demised premises, though used in the work of boring for oil and gas; that Limberg took exclusive possession of the leasehold, and merely acquired the privilege of using the machinery and fixtures of the company in the prosecution of the enterprise.

The learned court below, being of opinion that under " the agreement the company reserved an option to take the gas and agreed to pay the expenses of producing it, and thereby re-mained the owner, at least until it elected not to take it, while Limberg became the owner of the oil," held that the company re-tained an interest in the leasehold and in the work of develop-ment in which the plaintiff was employed, and directed a verdict for the plaintiff. The correctness of this ruling must depend on whether the company retained such right or interest in the lease-hold as would subject its property, left on the premises, to a lien for the work and labor done. There is no reservation in express terms. Does " the option to take said gas well " or the " well and gas," upon paying Limberg certain expenditures by him made in its development, constitute a reservation in the leasehold? We think not. An option is the right of choice, election, or selection; not a right in or to the thing, but the right to acquire it or an interest in it on certain conditions. Not until the owner of an option elects to accept and enforce its terms does it become binding upon him. Ordinarily (and in the present case), the grantor of an option has no power to compel the grantee to accept the right or privilege conferred or reserved; this remains wholly within the discretion of the grantee, and as we have said he has no right to or in the thing for which the option is given until this election is made. Of

course a substantial present interest cannot be fraudulently converted into an option or disguised under the form of one, and if it were shown that this was the purpose of the option in the present case it would be pronounced void. While the legal effect of the written agreement was for the interpretation of the court, whether its terms were so favorable to the company, in view of the exigencies of the business for which it provided as to be in effect a fraudulent evasion of this mechanic's lien law, was a question of fact to be passed upon by the jury. The testimony of the plaintiff to the effect that Mr. Adams, the secretary of the company, came upon the ground about the time it was intended to abandon the work, and ordered that it be continued until midnight, should have been submitted to the jury. It was for them to ascertain whether Adams was there representing the company and directing the conduct of the work on its behalf because of an existing interest in the leasehold or in the prosecution of the enterprise, or whether he was there in the interest of the company under the written agreement and in accordance with its terms. These were questions of fact for the consideration of the jury and the court erred in passing upon them as matter of law. While optional agreements in writing are to be interpreted and enforced in the same manner as other contracts, they cannot be used as vehicles of fraud, and are liable to impeachment for this reason if the evidence warrants it.

For the reasons given the judgment is reversed and a venire facias de novo awarded.